K. Kevin Levian, Esq., SBN 227734
**LEVIAN LAW**
1875 Century Park East, Suite 1025
Los Angeles, California 90067
(310) 277-7577 tel.
(310) 277-7377 fax

Attorney for Plaintiff RICARDO RODRIGUEZ

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

NOV 1 2 2019

C. Ortiz

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| RICARDO RODRIGUEZ, an individual; | CASE NO.: RC 1908218 |
| Plaintiff, | COMPLAINT FOR DAMAGES: |
| vs. | 1. WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY; |
| IT'S JUST LUNCH HOLDINGS, LLC, a Nevada corporation; ERIN THOMAS, an individual; RACHEL WILSON, an individual and DOES 1-50, inclusive, | 2. SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF FEHA; |
| Defendants. | 3. HARASSMENT BASED ON SEXUAL ORIENTATION IN VIOLATION OF FEHA; |
| | 4. FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF FEHA; |
| | 5. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS; |
| | 6. FAILURE TO PROVIDE UNINTERRUPTED MEAL BREAKS; |
| | 7. FAILURE TO PAY OVERTIME WAGES; |
| | 8. FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS; |
| | 9. FAILURE TO PAY ALL WAGES UPON DISCHARGE; |
| | 10. FAILURE TO PRODUCE AND MAINTAIN RECORDS; AND |
| | 11. UNFAIR BUSINESS PRACTICES |
| | [Unlimited Jurisdiction Amount in Controversy Exceeds $25,000] |
| | JURY TRIAL DEMANDED |

- 1 -
COMPLAINT FOR DAMAGES

**COMES NOW PLAINTIFF,** RICARDO RODRIGUEZ ("Plaintiff"), who alleges knowledge as to his own and upon information and belief as to all other matters, as follows:

## **PARTIES, JURISDICTION AND VENUE**

1.      Plaintiff was, at all times relevant hereto, a resident of Riverside County, State of California.

2.      Plaintiff is informed and believes, and thereon alleges Defendant IT'S JUST LUNCH HOLDINGS, LLC ("Defendant"), is and was, at all times relevant hereto, a Nevada corporation authorized to, and conducting business within, the County of Riverside, State of California.

3.      Plaintiff is informed and believes, and thereon alleges that Defendants ERIN THOMAS and RACHEL WILSON, are, and at all times material hereto were residents of Riverside County, California.

4.      The unlawful practices and tortious conduct complained of herein occurred in the County of Riverside, State of California.

5.      The monetary and equitable relief sought by Plaintiff exceeds the minimal jurisdictional limits of the Superior Court and will be established according to proof.

6.      Venue as to all Defendants is proper in this judicial district pursuant to CODE OF CIVIL PROCEDURE sections 393, 395, and 395.5, as the acts complained of herein occurred in Riverside County.  Defendants either reside, work, own, maintain offices, transact business, have an agent(s) within Riverside County, or are otherwise found within Riverside County, and are within the jurisdiction of this court for purposes of services of process.

7.      Plaintiff is ignorant of the true names of DOES 1-50, inclusive, and has therefore sued them by the above names that are fictitious.  Plaintiff will amend this Complaint by inserting the true names in lieu of the fictitious names, together with apt and proper charging words, when true names are ascertained.  Plaintiff is informed and believes, and thereon alleges, that each of the Defendants designated in this Complaint as DOE is responsible and liable to

1    Plaintiff in some manner for the events, happenings, and contentions referred to in this

2    Complaint.  All references in this Complaint to Defendants shall be deemed to include all DOE

3    Defendants.

4          8.        Defendant IT'S JUST LUNCH HOLDINGS, LLC. and DOES 1 through 50,

5    inclusive, are hereinafter collectively referred to as "Defendants."

6

7                    **ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

8          9.        On or about November 7, 2016, Plaintiff's employment with Defendants began as

9    a Dating Specialist on a full-time basis.

10         10.       At all times mentioned herein, California *Government Code* §12940 was in full

11   force and effect and was binding on Defendants as Defendants regularly employed

12   five (5) or more persons.

13         11.       Plaintiff was a model employee with a positive attitude who went above and

14   beyond to meet the needs of both his clients and his employers; often working overtime and

15   outside of his scheduled hours.

16         12.       After being hired by Defendants, Mr. Rodriguez became aware of the company's

17   overwhelmingly discriminatory environment.  The office was very vocal about political issues

18   stemming from the 2016 Presidential election and expressed distaste for the Lesbian, Gay,

19   Bisexual and Transgender ("LGBT") community.

20         13.       For example, Plaintiff's manager Defendant THOMAS often stated that

21   "We don't offer services for the gays," and expressed frustration when potential gay clients

22   would call.

23         14.       Because of the company's negative attitude toward homosexuality or homosexual

24   individuals, Mr. Rodriguez kept quiet about his sexual orientation and initially did not speak up

25   when his supervisor made disparaging comments.

26

27

28

15.    Plaintiff also experienced sexual harassment at the hands of his manager ERIN THOMAS on multiple occasions.

16.    During one incident, Defendant THOMAS made comments about Plaintiff's fitness routine, then proceeded to touch his chest and biceps without Plaintiff's consent, while remarking that his "muscular body" was well-defined.  Defendant WILSON looked on and agreed that Plaintiff was in "great shape." Defendant THOMAS touched Plaintiff's body in this manner on multiple occasions.

17.    In or around late October 2017, Plaintiff met with Defendant THOMAS to discuss his sales goals for the upcoming months.  It was in this meeting that Plaintiff decided to open up to Defendant THOMAS in order to account for his decrease in sales.

18.    Plaintiff explained that he had recently ended an eleven (11) year relationship with his partner, which made it difficult for him to focus at work.  Instead of showing concern, Defendant THOMAS callously stated: "So, you're gay. I didn't know you are gay." Plaintiff simply responded that he would stay positive and do his best to increase his numbers.

19.    After this meeting, Plaintiff's work environment got exponentially worse. He received his first write-up on November 2, 2017, for sending a picture to a client about a potential match.  This, however, was a common practice both among top performers as well as the manager that wrote Plaintiff up.

20.    Plaintiff's managers then began an investigation into Plaintiff's work. They looked through previous sales transactions and ordered the IT Department to gain access and search his work laptop, emails, photos, and files.

21.    Plaintiff believes that he was being targeted solely because of his sexual orientation.

22.    Defendant's IT department was unable to find anything negative regarding Plaintiff's work performance. Thus, to inculpate Plaintiff, managers including Sandra Hatton, Defendant WILSON and Defendant THOMAS asserted in bad faith a claim that Mr. Rodriguez

committed fraud by signing a client's membership contact and sending it through his personal e-mail. However, Plaintiff was coerced and pressured by Defendant THOMAS to forge signatures on a client's membership contract.

23.    After two (2) days of staging a sham investigation, which included sending Plaintiff home from work on November 13, 2017, Plaintiff was terminated on November 15, 2017 for "not following [It's Just Lunch] policy procedures."

24.    In addition to being wrongfully terminated and harassed because of his sexual orientation, Plaintiff was not fully compensated for his work.

25.    Plaintiff's compensation started out at ten dollars ($10.00) per hour plus commission and within less than two (2) months, he was compensated ten dollars and fifty cents ($10.50) per hour plus commission. From November 7, 2016 to the date of his termination on November 15, 2017, Plaintiff earned sixty-one thousand, five hundred and eighty-seven dollars ($61,587.00) in commission and benefits.

26.    Plaintiff regularly worked Monday through Friday from 9:00 a.m. to 6:00 p.m.; however, many times, he was required to work overtime in addition to these hours, in order to meet the needs of his clients.

27.    When this occurred, Plaintiff was not paid because he was forced to clock out. Defendant THOMAS was aware of this practice and at one point stated, "If you're working off the clock on your time, that's fine, I'll just pretend that I didn't hear you tell me."

28.    Plaintiff also did not receive timely meal or rest breaks. Defendants required Plaintiff to call a minimum of one-hundred (100) clients by 1:00 p.m. each day. He could not take a break until this requirement was met. On multiple occasions, Plaintiff was not allowed to take a meal break until 4:00 p.m.

29.    Defendant also failed to pay Plaintiff all of his wages upon termination, including an additional hour of compensation for all missed meal and rest breaks.

COMPLAINT FOR DAMAGES

30.    Plaintiff has adequately exhausted all of his administrative remedies under the Fair Employment and Housing Act ("FEHA") and obtained a "right to sue" letter from the Department of Fair Employment and Housing against Defendant.

31.    At all applicable times mentioned in this complaint, Defendants regularly employed five (5) or more persons bringing Defendants, and each of them, within the provisions of FEHA.

## I.
## FIRST CAUSE OF ACTION
### WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### (Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)

32.    Plaintiff incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

33.    At all mentioned herein, Plaintiff was employed by Defendant IT'S JUST LUNCH HOLDINGS, LLC., who is subject to the requirements of the Fair Employment and Housing Act.

34.    As alleged herein, Defendants engaged in acts that violate California's public policy in that Defendants have violated the Fair Employment and Housing Act ("FEHA"), which was enacted by our Legislature to prevent discrimination and retaliation from occurring in the work place on the basis of disability or medical condition.

35.    Plaintiff was a model employee with a positive attitude who went above and beyond to meet the needs of both his clients and his employers; often working overtime and outside of his scheduled hours.

36.    After being hired by Defendants, Mr. Rodriguez became aware of the company's overwhelmingly discriminatory environment.  The office was very vocal about political issues stemming from the 2016 Presidential election and expressed distaste for the Lesbian, Gay, Bisexual and Transgender ("LGBT") community.

- 6 -
COMPLAINT FOR DAMAGES

37.    For example, Plaintiff's manager Defendant THOMAS often stated that "We don't offer services for the gays," and expressed frustration when potential gay clients would call.

38.    Because of the company's negative attitude toward homosexuality or homosexual individuals, Mr. Rodriguez kept quiet about his sexual orientation and initially did not speak up when his supervisor made disparaging comments.

39.    Plaintiff also experienced sexual harassment at the hands of his manager ERIN THOMAS on multiple occasions.

40.    During one incident, Defendant THOMAS made comments about Plaintiff's fitness routine, then proceeded to touch his chest and biceps without Plaintiff's consent, while remarking that his "muscular body" was well-defined.  Defendant WILSON looked on and agreed that Plaintiff was in "great shape." Defendant THOMAS touched Plaintiff's body in this manner on multiple occasions.

41.    In or around late October 2017, Plaintiff met with Defendant THOMAS to discuss his sales goals for the upcoming months.  It was in this meeting that Plaintiff decided to open up to Defendant THOMAS in order to account for his decrease in sales.

42.    Plaintiff explained that he had recently ended an eleven (11) year relationship with his partner, which made it difficult for him to focus at work.  Instead of showing concern, Defendant THOMAS callously stated: "So, you're gay. I didn't know you are gay." Plaintiff simply responded that he would stay positive and do his best to increase his numbers.

43.    After this meeting, Plaintiff's work environment got exponentially worse. He received his first write-up on November 2, 2017, for sending a picture to a client about a potential match.  This, however, was a common practice both among top performers as well as the manager that wrote Plaintiff up.

44. Plaintiff's managers then began an investigation into Plaintiff's work. They looked through previous sales transactions and ordered the IT Department to gain access and search his work laptop, emails, photos, and files.

45. Plaintiff believes that he was being targeted solely because of his sexual orientation.

46. Defendant's IT department was unable to find anything negative regarding Plaintiff's work performance. Thus, to inculpate Plaintiff, managers including Sandra Hatton, Defendant WILSON and Defendant THOMAS asserted a claim in bad faith that Mr. Rodriguez committed fraud by signing a client's membership contact and sending it through his personal e-mail. However, Plaintiff was coerced and pressured by Defendant THOMAS to forge signatures on a client's membership contract.

47. After two (2) days of staging a sham investigation, which included sending Plaintiff home from work on November 13, 2017, Plaintiff was terminated on November 15, 2017 for "not following [It's Just Lunch] policy procedures."

48. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered loss of income in an amount according to proof. Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

49. Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, oppression, and with conscious disregard for his rights and with the intent, design and purpose of injuring Plaintiff. Defendants thereby caused Plaintiff emotional distress, anxiety, humiliation, nervousness, and tension. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

//

//

//

## II.
## SECOND CAUSE OF ACTION
## SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF FEHA
### [Cal. Gov't Code § 12940 et seq.]
### (Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)

50.     Plaintiff incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

51.     California *Government Code* Section 12940(a) prohibits employers from discriminating against employees on the basis of sexual orientation.

52.     Plaintiff was employed by Defendant IT'S JUST LUNCH HOLDINGS, LLC.

53.     Plaintiff was a model employee with a positive attitude who went above and beyond to meet the needs of both his clients and his employers; often working overtime and outside of his scheduled hours.

54.     After being hired by Defendants, Mr. Rodriguez became aware of the company's overwhelmingly discriminatory environment.  The office was very vocal about political issues stemming from the 2016 Presidential election and expressed distaste for the Lesbian, Gay, Bisexual and Transgender ("LGBT") community.

55.     For example, Plaintiff's manager Defendant THOMAS often stated that "We don't offer services for the gays," and expressed frustration when potential gay clients would call.

56.     Because of the company's negative attitude toward homosexuality or homosexual individuals, Mr. Rodriguez kept quiet about his sexual orientation and initially did not speak up when his supervisor made disparaging comments.

57.     Plaintiff also experienced sexual harassment at the hands of his manager ERIN THOMAS on multiple occasions.

58.    During one incident, Defendant THOMAS made comments about Plaintiff's fitness routine, then proceeded to touch his chest and biceps without Plaintiff's consent, while remarking that his "muscular body" was well-defined.    Defendant WILSON looked on and agreed that Plaintiff was in "great shape." Defendant THOMAS touched Plaintiff's body in this manner on multiple occasions.

59.    In or around late October 2017, Plaintiff met with Defendant THOMAS to discuss his sales goals for the upcoming months.  It was in this meeting that Plaintiff decided to open up to Defendant THOMAS in order to account for his decrease in sales.

60.    Plaintiff explained that he had recently ended an eleven (11) year relationship with his partner, which made it difficult for him to focus at work.  Instead of showing concern, Defendant THOMAS callously stated: "So, you're gay. I didn't know you are gay." Plaintiff simply responded that he would stay positive and do his best to increase his numbers.

61.    After this meeting, Plaintiff's work environment got exponentially worse. He received his first write-up on November 2, 2017, for sending a picture to a client about a potential match.  This, however, was a common practice both among top performers as well as the manager that wrote Plaintiff up.

62.    Plaintiff's managers then began an investigation into Plaintiff's work. They looked through previous sales transactions and ordered the IT Department to gain access and search his work laptop, emails, photos, and files.

63.    Plaintiff believes that he was being targeted solely because of his sexual orientation.

64.    Defendant's IT department was unable to find anything negative regarding Plaintiff's work performance. Thus, to inculpate Plaintiff, managers including Sandra Hatton, Defendant WILSON and Defendant THOMAS asserted a claim in bad faith that Mr. Rodriguez committed fraud by signing a client's membership contact and sending it through his personal e-

1  mail. However, Plaintiff was coerced and pressured by Defendant THOMAS to forge signatures

2  on a client's membership contract.

3      65.    After two (2) days of staging a sham investigation, which included sending

4  Plaintiff home from work on November 13, 2017, Plaintiff was terminated on November 15,

5  2017 for "not following [It's Just Lunch] policy procedures."

6      66.    As a direct and proximate result of Defendants' unlawful conduct as alleged

7  herein, Plaintiff has suffered loss of income in an amount according to proof.  Plaintiff also seeks

8  an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

9      67.    Plaintiff is informed and believes and based thereon alleges that the outrageous

10  conduct of Defendants described above was done with malice, oppression, and with conscious

11  disregard for his rights and with the intent, design and purpose of injuring Plaintiff. Defendants

12  thereby caused Plaintiff emotional distress, anxiety, humiliation, nervousness, and tension.

13  By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a

14  sum according to proof at trial.

15

16  **III.**
**THIRD CAUSE OF ACTION**

17  **HARASSMENT BASED ON SEXUAL ORIENTATION IN VIOLATION OF FEHA**
**[Cal. Gov't Code § 12940(j)]**

18  **(Against All Defendants and DOES 1-50, inclusive)**

19

20      68.    Plaintiff incorporates by reference each and every allegation contained in each

21  and every aforementioned paragraph as though set forth fully herein.

22      69.    California *Government Code* Section 12940(j) prohibits employers from harassing

23  employees on the basis of his or her sexual orientation.

24      70.    Plaintiff was employed by Defendant IT'S JUST LUNCH HOLDINGS, LLC.

25

26

27

28

COMPLAINT FOR DAMAGES

71.    Plaintiff was a model employee with a positive attitude who went above and beyond to meet the needs of both his clients and his employers; often working overtime and outside of his scheduled hours.

72.    After being hired by Defendants, Mr. Rodriguez became aware of the company's overwhelmingly discriminatory environment.  The office was very vocal about political issues stemming from the 2016 Presidential election and expressed distaste for the Lesbian, Gay, Bisexual and Transgender ("LGBT") community.

73.    For example, Plaintiff's manager Defendant THOMAS often stated that "We don't offer services for the gays," and expressed frustration when potential gay clients would call.

74.    Because of the company's negative attitude toward homosexuality or homosexual individuals, Mr. Rodriguez kept quiet about his sexual orientation and initially did not speak up when his supervisor made disparaging comments.

75.    Plaintiff also experienced sexual harassment at the hands of his manager ERIN THOMAS on multiple occasions.

76.    During one incident, Defendant THOMAS made comments about Plaintiff's fitness routine, then proceeded to touch his chest and biceps without Plaintiff's consent, while remarking that his "muscular body" was well-defined.  Defendant WILSON looked on and agreed that Plaintiff was in "great shape." Defendant THOMAS touched Plaintiff's body in this manner on multiple occasions.

77.    In or around late October 2017, Plaintiff met with Defendant THOMAS to discuss his sales goals for the upcoming months.  It was in this meeting that Plaintiff decided to open up to Defendant THOMAS in order to account for his decrease in sales.

78.    Plaintiff explained that he had recently ended an eleven (11) year relationship with his partner, which made it difficult for him to focus at work.  Instead of showing concern,

COMPLAINT FOR DAMAGES

Defendant THOMAS callously stated: "So, you're gay. I didn't know you are gay." Plaintiff simply responded that he would stay positive and do his best to increase his numbers.

79.    After this meeting, Plaintiff's work environment got exponentially worse. He received his first write-up on November 2, 2017, for sending a picture to a client about a potential match. This, however, was a common practice both among top performers as well as the manager that wrote Plaintiff up.

80.    Plaintiff's managers then began an investigation into Plaintiff's work. They looked through previous sales transactions and ordered the IT Department to gain access and search his work laptop, emails, photos, and files.

81.    Plaintiff believes that he was being targeted solely because of his sexual orientation.

82.    Defendant's IT department was unable to find anything negative regarding Plaintiff's work performance. Thus, to inculpate Plaintiff, managers including Sandra Hatton, Defendant WILSON and Defendant THOMAS asserted a claim in bad faith that Mr. Rodriguez committed fraud by signing a client's membership contact and sending it through his personal e-mail. However, Plaintiff was coerced and pressured by Defendant THOMAS to forge signatures on a client's membership contract.

83.    After two (2) days of staging a sham investigation, which included sending Plaintiff home from work on November 13, 2017, Plaintiff was terminated on November 15, 2017 for "not following [It's Just Lunch] policy procedures."

84.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered loss of income in an amount according to proof. Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

85.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, oppression, and with conscious disregard for his rights and with the intent, design and purpose of injuring Plaintiff. Defendants

1  thereby caused Plaintiff emotional distress, anxiety, humiliation, nervousness, and tension. By

2  reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum

3  according to proof at trial.

4

5  

**IV.**

**FOURTH CAUSE OF ACTION**

6  **FAILURE TO PREVENT DISCRIMINATION, HARASSMENT AND RETALIATION IN VIOLATION OF FEHA**

**[Cal. Gov't Code § 12940(k)]**

7  **(Against All Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)**

8

9

10  86.    Plaintiff incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

11

12  87.    According to California *Government Code* §12940(n), it is an unlawful

13  employment practice for an employer or other covered entity to fail to take all reasonable steps

14  necessary to prevent discrimination and harassment from occurring.

15  88.    Plaintiff was employed by Defendant IT'S JUST LUNCH HOLDINGS, LLC.

16  89.    Plaintiff was a model employee with a positive attitude who went above and

17  beyond to meet the needs of both his clients and his employers; often working overtime and

18  outside of his scheduled hours.

19  90.    After being hired by Defendants, Mr. Rodriguez became aware of the company's

20  overwhelmingly discriminatory environment.  The office was very vocal about political issues

21  stemming from the 2016 Presidential election and expressed distaste for the Lesbian, Gay,

22  Bisexual and Transgender ("LGBT") community.

23  91.    For example, Plaintiff's manager Defendant THOMAS often stated that

24  "We don't offer services for the gays," and expressed frustration when potential gay clients

25  would call.

26

27

28

92.     Because of the company's negative attitude toward homosexuality or homosexual individuals, Mr. Rodriguez kept quiet about his sexual orientation and initially did not speak up when his supervisor made disparaging comments.

93.     Plaintiff also experienced sexual harassment at the hands of his manager ERIN THOMAS on multiple occasions.

94.     During one incident, Defendant THOMAS made comments about Plaintiff's fitness routine, then proceeded to touch his chest and biceps without Plaintiff's consent, while remarking that his "muscular body" was well-defined.  Defendant WILSON looked on and agreed that Plaintiff was in "great shape." Defendant THOMAS touched Plaintiff's body in this manner on multiple occasions.

95.     In or around late October 2017, Plaintiff met with Defendant THOMAS to discuss his sales goals for the upcoming months.  It was in this meeting that Plaintiff decided to open up to Defendant THOMAS in order to account for his decrease in sales.

96.     Plaintiff explained that he had recently ended an eleven (11) year relationship with his partner, which made it difficult for him to focus at work.  Instead of showing concern, Defendant THOMAS callously stated: "So, you're gay. I didn't know you are gay." Plaintiff simply responded that he would stay positive and do his best to increase his numbers.

97.     After this meeting, Plaintiff's work environment got exponentially worse. He received his first write-up on November 2, 2017, for sending a picture to a client about a potential match.  This, however, was a common practice both among top performers as well as the manager that wrote Plaintiff up.

98.     Plaintiff's managers then began an investigation into Plaintiff's work. They looked through previous sales transactions and ordered the IT Department to gain access and search his work laptop, emails, photos, and files.

99.     Plaintiff believes that he was being targeted solely because of his sexual orientation.

COMPLAINT FOR DAMAGES

100.    Defendant's IT department was unable to find anything negative regarding Plaintiff's work performance. Thus, to inculpate Plaintiff, managers including Sandra Hatton, Defendant WILSON and Defendant THOMAS asserted a claim in bad faith that Mr. Rodriguez committed fraud by signing a client's membership contact and sending it through his personal e-mail. However, Plaintiff was coerced and pressured by Defendant THOMAS to forge signatures on a client's membership contract.

101.    After two (2) days of staging a sham investigation, which included sending Plaintiff home from work on November 13, 2017, Plaintiff was terminated on November 15, 2017 for "not following [It's Just Lunch] policy procedures."

102.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Plaintiff has suffered loss of income in an amount according to proof.  Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

103.    Plaintiff is informed and believes and based thereon alleges that the outrageous conduct of Defendants described above was done with malice, oppression, and with conscious disregard for his rights and with the intent, design and purpose of injuring Plaintiff. Defendants thereby caused Plaintiff emotional distress, anxiety, humiliation, nervousness, and tension. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from Defendants in a sum according to proof at trial.

## V.
## FIFTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against All Defendants and DOES 1-50, inclusive)

104.    Plaintiff alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

105.    Defendants' discriminatory, harassing, and retaliatory actions against plaintiff constituted severe and outrageous misconduct and caused plaintiff extreme emotional distress.

COMPLAINT FOR DAMAGES

106.    Defendants were aware that treating plaintiff in the manner alleged above, in-cluding depriving him of his livelihood, would devastate plaintiff and cause him extreme hardship.

107.    As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.   Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

108.    As a proximate result of defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

109.    Defendants' misconduct was committed intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

## VI.
## SIXTH CAUSE OF ACTION
### FAILURE TO PROVIDE UNINTERRUPTED MEAL BREAKS
(Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)

122.    Plaintiff alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

123.    At all time relevant hereto, LABOR CODE section 226.7(a) and IWC Order No. 5-2001 applied to Defendant's employment of Plaintiff. At all time relevant hereto, LABOR CODE section 226.7(a) provided that no employers could require employees to work during any rest period mandated by an applicable wage order.

124.    At all time relevant hereto, IWC Order Number 5-2001(12) required employers to provide to an employee a ten (10) minute rest period for every four (4) hours worked, unless the employees daily work time is less than three and a one-half (3.5) hours, and to provide such rest periods in the middle of each work period insofar as practicable.

125.    Throughout the entirety of his employment, Plaintiff worked eight (8) hour shifts. Plaintiff was not relieved of his duties to take a rest break. Consequently, Plaintiff did not receive any uninterrupted rest breaks from Defendant as required by the LABOR CODE.

126.    While employing Plaintiff, Defendant failed to compensate Plaintiff for work performed during rest periods that were not provided and thereby violated Labor Code section 226.7(a) and the applicable wage order.  Accordingly, pursuant to section 226.7(b), Plaintiff is entitled to recover from Defendant one (1) additional hour of pay at Plaintiff's regular rate of compensation for each work day that a rest period was not provided.

127.    Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

## VII.
### SEVENTH CAUSE OF ACTION
### FAILURE TO PAY OVERTIME WAGES
### (Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)

128.    Plaintiff alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

129.    At all time relevant hereto, LABOR CODE section 510 applied to Defendant's employment of Plaintiff. LABOR CODE section 510 and IWC Order No. 9-2001 provided that it was unlawful to employ persons such as Plaintiff without compensating Plaintiff at a rate of pay one and a half (1.5) times his regular rate of pay, depending on the number of hours worked by Plaintiff on a daily basis.  Specifically, the applicable ICW order provided that Defendants were required to pay Plaintiff at the rate of one and a half (1.5) times Plaintiff's regular rate if Plaintiff worked more than eight (8) hours in one day or more than forty (40) hours in one workweek. Furthermore, Defendant was required to pay Plaintiff at the rate of two (2) times Plaintiff's regular rate of pay if Plaintiff worked more than twelve (12) hours in one (1) workday.

130.    Defendant failed to pay Plaintiff at the proper overtime rate identified herein in violation of LABOR CODE section 510 and IWC Order No. 9-2001. Accordingly, Plaintiff is entitled to recover all damages, penalties, and other remedies available for Defendants' violations of section 510.

131.    Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

## VIII.
## EIGHTH CAUSE OF ACTION
### FAILURE TO PROVIDE ACCURATE, ITEMIZED WAGE STATEMENTS
**(Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)**

132.    Plaintiff alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

133.    At all time relevant hereto, Labor Code section 226(a) and IWC Order No. 5-2001 applied to Defendant's employment of Plaintiff.  At all times relevant hereto, section 226(a) and the applicable wage order required that employers such as Defendant furnished to its employees, semi-monthly or at the time of each payment of wages, an accurate itemized statement in writing showing such matters as the gross wages earned, the total hours worked, the net wages earned and all applicable hourly rates, during the pay period.

134.    At all times relevant hereto, Plaintiff is informed and believes, and thereon alleges, that Defendant knowingly and intentionally failed to provide such accurate itemized wage statements to Plaintiff, in that such statements failed to accurately show all hours worked, the gross and net wages earned, and all applicable hourly rates in violation of LABOR CODE section 226(a).  Plaintiff has suffered injury as a result of Defendant's failure to comply with section 226(a).

135.    Accordingly, pursuant to LABOR CODE section 226(e), Plaintiff is entitled to recover from Defendants fifty dollars ($50.00) for the initial violation of section 226(a), and one

1  hundred dollars ($100.00) for each subsequent violation, up to a maximum of four thousand

2  dollars ($4,000.00.)

3      136.  Plaintiff also seeks an award of attorneys' fees and costs pursuant to

4  GOVERNMENT CODE section 12965(b).

5

6  

**IX.**
**NINTH CAUSE OF ACTION**
**FAILURE TO PAY ALL WAGES UPON DISCHARGE**
**(Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)**

7

8

9      137.  Plaintiff incorporates by reference each and every allegation contained in each and

10  every aforementioned paragraph as though set forth fully herein.

11      138.  At all time relevant hereto, LABOR CODE sections 202 and 203 applied to

12  Defendant's employment of Plaintiff.  In particular, LABOR CODE section 202 provided that, if

13  an employee, not having a written contract for a definite period, quits his employment, all

14  wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the

15  employee has given seventy-two (72) hours previous notice of his or her intention to quit, in

16  which case the employee is entitled to his or her wages at the time of quitting.

17      139.  Plaintiff was terminated from Catered Fit on November 7, 2017 and has still has

18  not received the full amount he is owed.

19      140.  Plaintiff is informed and believes, and thereon alleges, that Defendant willfully

20  failed to pay Plaintiff all of his unpaid wages at the time of quitting, in violation of LABOR

21  CODE section 202.

22      141.  At all times relevant hereto, LABOR CODE section 203 provided that, if an

23  employer such as Defendant failed to pay any wages of an employee who is discharged, or

24  within seventy-two (72) hours from notice of the employees notice to quit, the wages of the

25  employee shall continue as a penalty from the due date thereof at the same rate until paid or

26  until an action therefore is commenced, but the wages shall not continue for more than thirty

27

- 20 -
COMPLAINT FOR DAMAGES

28

1    (30) days.  Accordingly, Plaintiff, is entitled to receive his daily wage for each day he was not

2    paid, at his regular rate of pay, for the maximum thirty (30) days.

3        142.    Plaintiff also seeks an award of attorneys' fees and costs pursuant to

4    GOVERNMENT CODE section 12965(b).

5

6                                    **X.**
                          **TENTH CAUSE OF ACTION**
7              **FAILURE TO PRODUCE AND MAINTAIN RECORDS**
                        **(Cal. Labor Code §§ 1174.5, 1198.5)**
8    **(Against Defendant IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)**

9        143.    Plaintiff incorporates by reference each and every allegation contained in each

10   and every aforementioned paragraph as though set forth fully herein.

11       144.    On December 11, 2017, Plaintiff requested Defendant to provide him with a copy

12   of his personnel file, and all documents and/or records arising from or relating to his employment

13   with Defendant.

14       145.    Plaintiff did not receive his employee file until January 11, 2018.

15       146.    Section 1174.5 of the California Labor Code states that any person employing

16   labor who willfully fails to allow any employee to inspect records within twenty one (21) days is

17   in violation of Labor Code section 1174.

18       147.    Labor Code section 1174.5 provides that those in violation of the code shall be

19   subject to a civil penalty of five hundred dollars ($500.00).

20       148.    Defendant has willfully failed to comply with Plaintiff's request to view his

21   employee file.

22       149.    Defendant is in violation of California Labor Code sections 1174.5 and is liable

23   for an additional five hundred dollars ($500.00) penalty to Plaintiff.

24       150.    Plaintiff also seeks an award of attorneys' fees and costs pursuant to

25   GOVERNMENT CODE section 12965(b).

26

27

28

- 21 -
COMPLAINT FOR DAMAGES

**XI.**
**ELEVENTH CAUSE OF ACTION**
**UNFAIR BUSINESS PRACTICES *C.C.P.* § 17200 et. seq.**
**(Against IT'S JUST LUNCH HOLDINGS, LLC., and DOES 1-50, inclusive)**

151.    Plaintiff alleges and incorporates by reference each and every allegation contained in each and every aforementioned paragraph as though set forth fully herein.

152.    During the employment period, all Defendants' practices, as alleged above, have been and continue to be unfair, illegal, and harmful to Plaintiff and the general public. Defendants' above-alleged practices constitute violations of Business and Professions Code section 17200, *et seq.*  Specifically, a practice that violates any state law or regulation may constitute the basis of an unlawful business practice prohibited by Business and Professions Code section 17200 *et seq.*

153.    Among other things, the following practices of Defendants, as alleged above, all Defendants' discrimination, harassment and retaliation against Plaintiff because of his sexual orientation, and Defendant's failure to provide meal and rest breaks.

154.    Accordingly, pursuant to Business and Professions Code section 17200 *et seq.*, Plaintiff is entitled to restitution of wages/monetary damages caused by Defendant and/or injunctive relief requiring Defendant to pay all wages and other sums due to the Plaintiff due to their wrongful termination and illegal discriminatory, retaliatory conduct.

155.    Furthermore, unless and until enjoined and restrained by Order of this Court, such unfair, fraudulent or illegal practices by all Defendants will cause great and irreparable injury to not only Plaintiff, but others similarly situated as Plaintiff.

156.    Plaintiff has no other adequate remedy at law to ensure compliance with California's labor and employment laws, and, consequently, Plaintiff is entitled to preliminary and permanent injunctive relief restraining Defendant from engaging in continuing unfair business practices.

157.    Plaintiff meets the standing requirements for seeking relief pursuant to Business and Professions Code section 17203, in that Plaintiff has suffered injury in fact and has lost

money as a result of Defendant's policies, practices and procedures, as more fully set forth elsewhere in this pleading.

158.    Plaintiff also seeks an award of attorneys' fees and costs pursuant to GOVERNMENT CODE section 12965(b).

### PRAYER

**WHEREFORE**, Plaintiffs prays for judgment against Defendants as follows:

1.  For compensatory, consequential and incidental damages (including past and future lost wages, bonuses, and other losses) in an amount according to proof (CIV. CODE § 3333);

2.  For special damages, in an amount according to proof;

3.  For prejudgment interest;

4.  For reasonable attorneys' fees and costs pursuant to Government Code § 12940 *et. seq.*, and/or other applicable laws;

5.  Punitive Damages; and

6.  For such other relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of all her claims by jury to the extent authorized by law.

DATED:  November 12, 2019                          Respectfully submitted,

                                                                        **LEVIAN LAW**

                                                                        By: _____
                                                                        K. Kevin Levian, Esq.,
                                                                        Attorney for Plaintiff,
                                                                        RICARDO RODRIGUEZ